UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,

        Plaintiff,

v.                                      Case No. 21-cv-46

MILWAUKEE COUNTY, COMMANDER DUCKERT,
DEPUTY COMMANDER DOBSON,
DR. KIM, MS. RESCH, LT. EHRMANN,
JOHN AND JANE DOE JAIL OFFICIALS #1-5,
and WELLPATH HEALTH SERVICES,

        Defendants.

## ORDER SCREENING AMENDED COMPLAINT AND DENYING AS MOOT MOTION TO TREAT AND SCREEN COMPLAINTS PURSUANT TO 28 U.S.C. §1915 (DKT. NO. 18)

Plaintiff Christopher Goodvine, who is confined at Columbia Correctional Institution and is representing himself, filed a civil rights complaint under 42 U.S.C. §1983 alleging that the defendants violated his civil rights. Dkt. No. 1. On June 1, 2021, Magistrate Judge Stephen C. Dries screened the plaintiff's original complaint and found that the complaint violated Federal Rules of Civil Procedure 18 and 20 because it stated two separate and unrelated claims. Dkt. No. 14. Judge Dries gave the plaintiff a deadline of June 15, 2021 to file an amended complaint picking one of the claims upon which to proceed. On June 9, 2021, the plaintiff filed a motion to extend the deadline to file an amended complaint, dkt. no. 15, which Judge Dries granted, giving the plaintiff until

July 1, 2021 to file an amended complaint, dkt. no. 16. The plaintiff filed the amended complaint on June 28, 2021. Dkt. No. 17.

The defendants have not had the opportunity to decide whether to consent to Magistrate Judge Dries' authority to decide the case, so the case was randomly referred to this U.S. District Court judge for the limited purpose of screening the amended complaint. The court will return the case to Magistrate Judge Dries for further proceedings after entry of this order.

**I.      Screening the Amended Complaint**

    A.      <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   Plaintiff's Allegations

The plaintiff alleges that when he arrived at Milwaukee County Jail in late January of 2019, he informed John Doe Official Number 1, who was a nurse supervising the intake shift, of his severe mental health issues and his prescription for Seroquel. Dkt. No. 17 at ¶¶14-15. The plaintiff states that he takes Seroquel as needed to "suppress impulsiveness, self-harm urges, and as a mood stabilizer." Id. at ¶12. The plaintiff says he also let John Doe Official Number 1 see his neck and arms, "which are scarred with lacerations." Id. at ¶15. John Doe Official Number 1 had the plaintiff sign a medical release in order to be able to obtain the prescription from a local Walgreens or CVS pharmacy. Id. He explained to the plaintiff that it was unlikely the plaintiff

3

would be able to get the Seroquel at the jail. Id. John Doe Official Number 1 did not refer the plaintiff for a psychiatry or psychology evaluation and assessment or, the plaintiff says, "timely replacement of the [s]eroquel or a suitable substitution." Id. The plaintiff alleges that John Doe Official Number 1 was aware that the plaintiff was severely mentally ill and that he took Seroquel to "inhibit self-harm and destructive behaviors;" the plaintiff says that he told John Doe Official Number 1 "unequivocally" that he was likely to become "self-injurious without his psychotropic prophylactics." Id.

Between late January and mid-February 2019, the plaintiff spoke several times to defendant Ms. Resch, a mental health worker at the jail assigned to the plaintiff's unit, about his mental health diagnoses and his need for the Seroquel prescription. Id. at ¶16. The plaintiff attempted to work with Resch several times to get access to his medication, including offering to have his fiancée deliver the mediation to the jail. Id. The plaintiff says he showed Resch his neck and arms, explaining that he was likely to decompensate into self-harm if he didn't have the medication. Id. The plaintiff says that his fiancée called the jail and spoke to Resch at least twice, "and at one point even brought [his] prescription to the Jail only to be turned away." Id. at ¶17. Resch initially refused to facilitate a referral for a psychiatric or psychological assessment or look at his psychiatric history on the grounds that the jail typically did not allow Seroquel. Id. at ¶18. Later, she said the jail wouldn't honor his prescription because he'd been prescribed only 100mg in the late evening and 50 mg at noon; because the plaintiff used less than 300 mg, she stated the

4

Seroquel was indicated only for sleep. Id. The plaintiff says that he explained that the prescription was not just for sleep and told her that she could not make that determination without looking at his medical records. Id. The plaintiff says that Resch still refused to refer him for a psychiatric evaluation onsite, even though he was under stress because his fiancée was experiencing a high-risk pregnancy and he himself was facing life in prison, which was making him "self-injurious and explosive." Id.

The plaintiff says that eventually, after he'd approached Resch repeatedly, Resch did confirm that the Seroquel was not for sleep. Id. at ¶19. But, he says, she then changed her rationale for why he would not get the medication at the jail, saying that the plaintiff had not been using it daily and had not had the prescription refilled for approximately sixty to ninety days, so there was no need for the plaintiff to have it. Id. at ¶20. The plaintiff says he explained to Resch that the prescription was written PRN—to be taken as needed—but he says she still took no steps to facilitate his treatment or evaluation. Id. Again, the plaintiff says that he and his fiancée told Resch that the plaintiff was getting "increasingly self-injurious and explosive." Id.

The plaintiff alleges that on February 12, 2019, he had a mental breakdown and destroyed the computers in his housing unit. Id. at ¶21. Defendant Lt. Ehrmann responded to the unit, with her taser drawn, and instructed him to turn around. Id. at ¶22. The plaintiff says that he complied, but that Ehrmann tased him even though he no longer was being disruptive. Id. at ¶¶22-23. He says that Ehrmann told him to get to his knees; he says he

5

did so, but that she continued "to cause tens of thousands of volts to course through his body." Id. He says that because he'd destroyed the computers on the unit, the officer on the unit could not open the door for support staff to enter. Id. at ¶23. The plaintiff alleges that when Ehrmann saw this, she "chose to continue to tase [him] until additional staff arrived on the unit, causing extreme pain and incapacitation though he was no longer offering any active resistance." Id.

The plaintiff alleges that he was taken to segregation, where he seriously lacerated and mutilated himself twice, requiring two sets of sutures. Id. at ¶24. He says he then was seen by Dr. McQueeney in psychiatry (who'd treated the plaintiff before), and the Seroquel was ordered and administered that day. Id. at ¶25.

The plaintiff asserts that it was "the practice, policy, and custom of the Jail and its officials, namely Duckert, Dobson, Wellpath, Dr. Kim, Ms. Resch, and John and Jane Doe Officials Number 1-5 to not routinely and automatically refer inmates entering the Jail with psychotropic prescriptions and serious self-injury histories to psychological and/or psychiatry." Id. at ¶26. He also states it was policy to automatically deny prescriptions for Seroquel without providing any alternative treatment, even where a condition meriting treatment already had been diagnosed. Id.

C. Analysis

The plaintiff alleges that John Doe Official Number 1 failed to treat and protect him in violation of the Eighth and Fourteenth Amendments by failing to

6

refer him to psychiatry or psychology for assessment and evaluation. Id. at ¶28. He says that Resch prevented him from getting the medical help and medication he needed in violation of the Eight and Fourteenth Amendments. Id. at ¶29. He says that Milwaukee County and Wellpath had a pattern and practice of refusing to fill prescriptions for Seroquel in violation of the Eighth and Fourteenth Amendments. Id. at ¶30. Finally, he alleges that Ehrmann used excessive force against him in violation of the Eighth and Fourteenth Amendments. Id. at ¶31.

The plaintiff cannot proceed on claims against defendants Duckert (who was the commander of the jail), Dobson (who was the deputy commander of the jail), Wellpath (the contract medical provider at the jail) or Dr. Kim (the director of mental health services at the jail). The plaintiff says that his allegations state a claim "of negligence under the doctrine of supervisory liability relative to the plaintiff's Monell claim given that both [Milwaukee County and Wellpath], are liable, including Dr. Kim, for failures of their subordinates and employees under Wisconsin state law." Id. at ¶30. But "[t]here is no such thing as *respondeat superior* liability for government officials under § 1983." Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. June 2, 2021). "The supervisor is therefore liable only if she was personally involved in the constitutional violation." Id. (citing Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017)). "Personal involvement in a subordinate's constitutional violation requires supervisors to 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" Id. (quoting Matthews v. City of St. Louis,

7

675 F.3d 703, 708 (7th Cir. 2012)). The plaintiff has not provided *any* facts about any of these supervisors, much less demonstrated that they knew about the conduct he describe and facilitated, approved, condoned or turned a blind eye to it. The court will dismiss these defendants.

Nor has the plaintiff sufficiently stated a claim against Jane and John Does 2-5. The only Doe defendant against whom he makes specific allegations is John Doe Official Number 1. He does not mention any other Doe defendants who were involved with allegedly denying him treatment, denying him medication or subjecting him to excessive force. The court will dismiss these defendants.

The plaintiff seeks to assert a claim against Milwaukee County under <u>Monell v. Dept. of Social Servs. of City of New York</u>, 436 U.S. 658, 690 (1978), which provides that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Under <u>Monell</u>, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents;" it must be the execution of an official policy or custom that inflicts the harm for <u>Monell</u> liability to apply. <u>Id.</u> at 694-95.

The plaintiff has alleged that John Doe Official Number 1 told him that it was unlikely that he would receive Seroquel in the jail. He has alleged that Resch initially refused to refer him for treatment on the ground that the jail

8

normally did not prescribe Seroquel. He has alleged that it was jail policy not to routinely and automatically refer persons coming into the jail with histories of self-harm and prescriptions for psychotropic medication for psychiatric or psychological evaluation, and to automatically deny Seroquel without providing a substitute. While these allegations are bare-bones, the court concludes that the plaintiff has stated sufficient facts, at the pleading stage, to allow him to proceed on a Monell claim against Milwaukee County for failure to protect/deliberate indifference.

    The plaintiff has stated sufficient facts to proceed on a claim against John Doe Official Number 1 and Ms. Resch. It appears that the plaintiff was a pretrial detainee at the time of these events; he explains that in late January 2019 he was arrested on murder charges and federal drug charges. Dkt. No. 17 at ¶14. This means that his rights arise out of the Fourteenth Amendment's Due Process clause. See Miranda v. Cty. of Lake, 900 F.3d 335, 350-51 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brought by prisoners). To state a claim, the plaintiff must allege that the defendant's conduct was objectively unreasonable. Id. at 351 (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). Objective reasonableness is determined from the perspective of a reasonable person at the time. Kingsley, 576 U.S. at 397. It turns on the facts and circumstances of each particular case. Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The plaintiff has alleged that he clearly told John Doe Official Number 1 and Resch about

his mental health condition and his prescription. He has alleged that he showed both of them the scars on his neck and arms, where he had tried to harm himself in the past. While the claim against John Doe Official Number 1 is thinner, the plaintiff alleges that Doe had him fill out a form to get prescription information from local drugstores, yet told the plaintiff he likely would not receive the needed medication. As for Resch, the plaintiff alleges that both he and his fiancée tried repeatedly to get the medication, and that Resch gave him varying reasons for not referring him for treatment. Even after Resch confirmed that the Seroquel had not been prescribed for sleep, she still refused to refer the plaintiff for treatment. At the pleading stage, the plaintiff has alleged sufficient facts to allow him to proceed against John Doe Official Number 1 and Resch on claims of failure to protect and deliberate indifference.

Because one of the defendants is a Doe defendant, the plaintiff will need to send the named defendants discovery requests to identify the real name of John Doe Officer Number 1. Once the named defendants answer the complaint, the court will issue a scheduling order providing more information about identifying John Doe Officer Number 1.

The plaintiff also has stated sufficient facts to allow him to proceed on an excessive force claim against Lt. Ehrmann. The Supreme Court has held that if an official deliberately uses force against a pretrial detainee, the detainee's claim may proceed. <u>Kingsley</u>, 576 U.S. at 396. Again, the court must consider the facts and circumstances of the particular case. <u>Id.</u> at 397. The court makes the determination "from the perspective of a reasonable officer on the scene,

including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. The court also must consider other factors—the legitimate need of jail officials to manage the facility, the relationship between the need to use force and the amount of force used, the extent of the plaintiff's injury, the officer's efforts to temper the use of force, the severity of the security issue, the threat the officer reasonably perceived and whether the plaintiff was actively resisting. Id.

The plaintiff concedes that during his breakdown, he destroyed all the computers on his unit. But he says that when Ehrmann arrived and deployed the taser, he complied with all her requests—turning around, getting on his knees. While Erhmann certainly had a legitimate interest in preventing the plaintiff from doing further damage, his account of events indicates that he was no longer acting out when Ehrmann arrived, that the security issue had dissipated somewhat and that there was no reason for Ehrmann to perceive a threat to her. He also asserts that Ehrmann used the taser despite his compliance, and did so for such a long time that he suffered injury. The plaintiff has stated a claim that Ehrmann's use of force against him was objectively unreasonable.

## II. Motion to Treat and Screen Complaints (Dkt. No. 18)

On August 23, 2021, the court received from the plaintiff a motion asserting that this case had not been screened and that another of his cases, Case No. 21-cv-45, did not yet have a scheduling order. Dkt. No. 18. He asked the court to screen this case as soon as possible and asked that a scheduling

11

order be issued as quickly as possibly in Case No. 21-cv-45. Id. The court will deny the motion as moot as it relates to this case; the court has screened the complaint. As to Case No. 21-cv-45, that case is assigned to Judge Dries, not this court.

### III. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion to screen and treat complaints. Dkt. No. 18.

The court **ORDERS** that defendants Duckert, Dobson, Wellpath, Kim, and John and Jane Doe Officials Numbers 2-5 are **DISMISSED**.

Under an informal service agreement between Milwaukee County and this court, a copy of the amended complaint and this order will be electronically transmitted to Milwaukee County for service on defendants Milwaukee County, Resch and Ehrmann. The court **ORDERS** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions. After the court enters the scheduling order, the plaintiff may make discovery requests (written questions or requests for documents) on the named defendants to identify the real name of John Doe Official Number 1. Once he knows the real name of John Doe Official Number 1, he should file a motion a motion identifying the officer's real name. Again,

12

the plaintiff should not serve any discovery request upon the named defendants until *after* the court enters a scheduling order.

The court **ORDERS** that plaintiffs incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that failure to timely file pleadings and other documents or to meet the deadlines the court sets may result in the dismissal of the case for failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in dismissal of the case without further notice.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

13

The court **RETURNS** this case to Magistrate Judge Dries for further proceedings.

Dated in Milwaukee, Wisconsin this 1st day of September, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**