UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER GOODVINE,

                Plaintiff,

v.                                        Case No. 21-cv-46-pp

JOHN DOE JAIL OFFICIAL 1,
MILWAUKEE COUNTY, MS. RESCH
and REBECCA POLZIN,
*formerly known as* Rebecca Ehrmann,

                Defendants.

---

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 46, 51) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY AND TO STRIKE (DKT. NO. 66)**

---

Christopher Goodvine, who is incarcerated at Columbia Correctional Institution and is representing himself, filed this case alleging that the defendants violated his constitutional rights while he was confined at the Milwaukee County Jail. Dkt. No. 1. The court screened the amended complaint and allowed the plaintiff to proceed on the following claims: (1) Fourteenth Amendment failure to protect and medical care claims against Milwaukee County under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978), based on allegations that Milwaukee County Jail policy prevented him from receiving Seroquel in the jail; (2) Fourteenth Amendment failure to protect and medical care claims against John Doe Jail Official 1 and Ms. Resch, based on allegations that they refused to provide him with Seroquel medication and/or refer him for treatment; and (3) a Fourteenth Amendment

1

excessive force claim against Lieutenant Rebecca Polzin (formerly known as Rebecca Ehrmann), based on allegations that Polzin unreasonably deployed a taser on the plaintiff. Dkt. No. 19 at 9-11.

John Doe Jail Official 1,[1] Milwaukee County and Polzin (the "Milwaukee County defendants") have filed an amended motion for summary judgment in which they argue that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 51. Defendant Resch also has filed a motion for summary judgment on exhaustion grounds. Dkt. No. 46. The court will deny the defendants' motions and set deadlines for discovery and for the parties to file motions for summary judgment on the merits.

## I. Facts[2]

The plaintiff was booked into the Milwaukee County Jail in late January 2020. Dkt. No. 45 at ¶7. Upon being booked into the jail, the plaintiff was informed of the jail's grievance process and had access to the jail's "Inmate Handbook" which, among other things, describes the procedure for incarcerated individuals to file grievances and appeals. Id. at ¶¶8-9. To make a formal grievance concerning health, welfare, facility operation or inmate

---

[1] The scheduling order set a deadline of August 22, 2022, for the plaintiff to identify the Doe defendant. Dkt. No. 35. Before that deadline, the defendants filed their motions for summary judgment on exhaustion grounds and the court stayed discovery. Dkt. No. 54. At the end of this order, the court will set a new deadline by which the plaintiff must identify the Doe defendant.

[2] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

services or to address an issue of employee oppression or misconduct, an incarcerated individual must use the following procedure:

> 1) Complete a written grievance form. If you need help, ask the officer or request the assistance of an advocate.
>
> 2) Place the completed form in the grievance box or hand to an officer if a box is not available.
>
> 3) The grievance will be reviewed and answered by a Jail Representative.
>
> 4) If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. The Captain will review and rule on your appeal.
>
> 5) Once the Captain has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the newfound information/evidence. This decision/action is final.

Dkt. No. 48 at ¶3; Dkt. No. 45 at ¶10; Dkt. No. 49-1 at 3.

On July 1, 2020, the jail converted to an electronic kiosk system to better track and respond to grievances. Dkt. No. 48 at ¶11. Since this date, the jail has required that an incarcerated individual complete an electronic grievance form on the kiosk. Id. Prior to that date, jail staff accepted grievances in handwritten form. Id.

From January 25, 2020 through August 10, 2020, the plaintiff filed sixteen grievances. Dkt. No. 45 at ¶11; Dkt. No. 48 at ¶¶26-27. Of these, two grievances (Numbers 20-000510 and 20-000673) related to his failure to protect and medical care claims against Milwaukee County, John Doe Officer 1 and Resch. Dkt. No. 48 at ¶28. He filed one grievance (Number 20-000511) relating to his use of force claim against Polzin. Id. at ¶29.

According to the defendants, the jail's records do not contain evidence that the plaintiff appealed the relevant grievances to the Jail Commander or his designee; that is, a second level appeal. Dkt. No. 48 at ¶34; Dkt. No. 45 at ¶15. According to the plaintiff, he *did* pursue a second level appeal to the Jail Commander's designee for Grievance Numbers 20-000510 and 20-000673. Dkt. No. 60 at ¶11. He avers that he submitted his first level appeals for these grievances in late April or early May 2020 and that, after he inquired about them because he hadn't received a decision, jail staff directed him to resubmit them because the appeals had been lost. Id. at ¶9. The plaintiff resubmitted his first level appeals and on June 25, 2020, the jail issued the decisions on the appeals. Id.; Dkt. No. 60-1 at 8 (Number 20-000510), 14 (Number 20-000673).

That same day, the plaintiff tried to submit an unrelated grievance on paper and an officer told him he had to use the kiosk. Dkt. No. 60 at ¶10. The plaintiff avers that the new kiosk grievance procedure was not explained to him. Id. From late June 2020 until he left the jail on August 10, 2020, the plaintiff was on suicide watch in the mental health unit and could not possess any new rule book. Id. The plaintiff subsequently tried to submit his unrelated grievance as well as his second level appeals for Grievance Numbers 20-000510 and 20-000673 using the kiosk, but the kiosk system would not process them. Id. at ¶11. Captain Briggs and Lieutenant Emmanuelle were informed of the malfunction, and they directed Ms. Montano, "or some other Latina female," to report to the mental health unit and assess the issue. Id. The plaintiff avers that, until the problem was fixed, he was directed to submit his grievances and

appeals in writing and that on July 7, 2020, he submitted his two second level appeals in writing. Id. On July 31, 2020, an Officer Johnston returned the appeals to the plaintiff and told him that people incarcerated at the jail could no longer submit paper grievances.[3] Id. The plaintiff gave the two second level appeals to Lieutenant Emmanuele to deliver to the grievance department, and he no longer has them.[4] Id.

Regarding Grievance Number 20-000511, the plaintiff submitted his first level appeal, and the appeal officer received it on June 22, 2020. Dkt. No. 60 at ¶16; Dkt. No. 60-1 at 3. The plaintiff transferred out of the jail on August 10, 2020, before he could complete a second level appeal. Dkt. No. 60 at ¶¶14, 17.

The Milwaukee County defendants state that the jail's grievance process was fully operational and available to the plaintiff during his period of incarceration from January 25, 2020 through August 10, 2020. Dkt. No. 48 at ¶10. According to the plaintiff, when he learned about the kiosk system it was so difficult to navigate that jail supervisory staff had to have Ms. Montano or another grievance staff member dispatched to the mental health unit because unit staff could not navigate it sufficiently to assist him in submitting his grievance. Dkt. No. 60 at ¶¶11-12.

---

[3] The plaintiff states that he recalls this because Officer Johnston also returned an unrelated grievance he had submitted regarding Officer Adams. Id.

[4] The plaintiff states that the female officer who returned to the mental health unit to fix the kiosk filed the unrelated grievance regarding Officer Adams ending 1881. Id.

5

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

6

B.  Discussion

The defendants contend that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 43 at 1; Dkt. No. 47 at 6. According to the Milwaukee County defendants, the plaintiff filed three grievances related to the claims raised in this case, but he failed to complete the administrative process available to him by appealing any of these grievances to the final decisionmaker, the Jail Commander's designee. Dkt. No. 47 at 7. According to Resch, regarding the two grievances the plaintiff filed related to medical treatment at the jail (20-000510 and 20-00067-3), the plaintiff did not exhaust the administrative remedies available to him because he did not appeal the grievances to the Jail Commander. Dkt. No. 43 at 2.

The plaintiff contends that he fully exhausted his available remedies. Dkt. No. 61 at 9. According to the plaintiff, he twice appealed the grievances he filed related to his requests for medication, 20-000510 and 20-000673. Dkt. No. 61 at 4. Regarding the use-of-force grievance, 20-000511, the plaintiff states that he did not have a deadline by which to submit his second level appeal and he was transferred from the jail before he could do so. Id. at 14-17. The plaintiff also contends that administrative remedies were unavailable because the jail failed to communicate new grievance procedures to him. Id. at 12 to 13.

The Milwaukee County defendants reply that Polzin is entitled to summary judgment on the plaintiff's use of force claim because it is undisputed that the plaintiff did not file a second level appeal regarding

7

Grievance Number 22-000511. Dkt. No. 62 at 2. The Milwaukee County defendants also contend that the plaintiff did not properly exhaust the relevant medical grievances. Id. 2-3. They point out that the plaintiff has not produced paper copies of the second level appeals he says he filed and that, even if he had, the plaintiff concedes that he did not properly submit appeals because as of July 1, 2020, he was required to submit his appeals electronically using the kiosk and he admits that he didn't do that. Id. at 3. These defendants also state that the record shows that the plaintiff followed the correct procedure and used the kiosk to file an unrelated grievance on July 31, 2020. Id.

In her reply, Resch contends that the undisputed facts show that the plaintiff failed to exhaust his administrative remedies because the plaintiff has not supplied copies of his alleged second grievance appeals or any objective evidence supporting his claim that he submitted a second level appeal. Dkt. No. 65 at 2. Resch also contends that, assuming the plaintiff attempted to submit two final grievance appeals, he failed to properly file the appeals because, after he was explicitly told he could not submit written grievance appeals, he again attempted to submit written grievance appeals on July 31, 2020. Id. Resch also states that it is undisputed that the kiosk system was working on July 31, 2020 because the plaintiff submitted a grievance on another issue via the kiosk on that date. Id. at 3-4. Resch contends that the jail sufficiently communicated its grievance procedure to the plaintiff and that he knew how to use the kiosk system. Id. at 4-5.

The Prison Litigation Reform Act (PLRA) provides that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The exhaustion requirement is interpreted strictly and a "prisoner must comply with the specific procedures and deadlines established by the prison's

9

policy." Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016) (quoting King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015)). But "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." Id.

For grievance numbers 20-000510 and 20-000673, the plaintiff avers that on June 25, 2020, he tried to use the jail's new kiosk system to submit second level appeals electronically, the kiosk system would not process them, he was directed to submit his grievances and appeals in writing until the problem was fixed and that he submitted his appeals in writing on July 7, 2020, as directed. The plaintiff also avers that Officer Johnston returned the appeals to him on July 31, 2020 and said he could no longer submit paper grievances. The plaintiff says he gave the appeals to Lieutenant Emmanuelle and he no longer has them.

Although the defendants emphasize that the plaintiff did not produce the paper appeals, the plaintiff's declaration is evidence that he submitted them, and explains why he no longer has them. See Fed. R. Civ. P. 56(a)(1)(A). The defendants do not dispute the plaintiff's averments that he followed the directions of jail staff and submitted his second level appeals in writing on July 7, 2020. Rather, they contend that assuming Officer Johnston returned the second level appeals to the plaintiff on July 31, 2022 and told him that he could no longer submit paper grievances, the plaintiff's submission of the appeals to Lieutenant Emmanuelle to deliver to the grievance department shows that he did not properly exhaust his remedies because he did not follow Officer Johnston's directions. But by submitting the two second level appeals

10

in paper form on July 7, 2022 (because jail staff directed him to do so until the kiosk issues were addressed), the plaintiff fully exhausted these grievances. See Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006) (because incarcerated individual properly followed procedure and prison officials were responsible for mishandling grievance, incarcerated individual exhausted available administrative remedies). The plaintiff does not aver that when Officer Johnston returned the appeals on July 31, 2020, he explicitly directed the plaintiff to submit the appeals electronically; the plaintiff avers only that Officer Johnston said he could not submit paper grievances. Assuming Officer Johnston meant that the plaintiff should submit his appeals via the kiosk, this would have conflicted with the directions the plaintiff previously had received from jail staff. The plaintiff did not fail to properly exhaust. See Curtis v. Timberlake, 436 F.3d 709, 712 (7th Cir. 2005) (citing Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (holding that when prison officials told prisoner that grievance procedures were different than official procedures, prisoner was not required to follow written procedures)). By submitting the appeals in writing on July 7, 2022, at the direction of jail staff, the plaintiff fully exhausted his remedies.

Regarding grievance number 20-000511, the plaintiff submitted a first level appeal, then was transferred out of the jail before submitting a second level appeal. The inmate handbook does not include a deadline for filing a second level appeal and it does not direct incarcerated individuals to submit one after they leave the jail. The record does not support a finding that the

11

plaintiff failed to exhaust his administrative remedies as to this grievance. See Wood v. County, No. 19-CV-619, 2021 WL 2439209, at *3 (E.D. Wis. June 15, 2021) (citing White v. Bukowski, 800 F.3d 392, 396–97 (7th Cir. 2015) (holding that administrative remedies are unavailable where an inmate was "uninformed about any deadline for filing a grievance")).

Because the plaintiff has exhausted his available administrative remedies, the court need not address the parties' arguments that remedies were unavailable because jail staff did not explain the new kiosk system to him. The court will deny the defendants' motions for summary judgment on exhaustion grounds and set deadlines for the plaintiff to identify the Doe defendants and for the parties to complete discovery and file motions for summary judgment on the merits.[5]

### III. Conclusion

The court **DENIES** the Milwaukee County defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 46.

The court **DENIES** defendant Resch's amended motion for summary judgment. Dkt. No. 51.

---

[5] The plaintiff filed a motion for leave to file a sur-reply and a motion to strike Resch's Reply in Support of Proposed Findings of Fact. Dkt. No. 66. The defendants have not opposed the plaintiff's motions, but the court's local rules do not provide for sur-replies and the court has not relied on the plaintiff's sur-reply in resolving the defendants' motions for summary judgment. The plaintiff correctly states that court's rules do not provide for defendant Resch's reply in support of his proposed findings of fact, so the court also has not considered this filing in resolving the motions. Collateral motions, such as motions to strike, are disfavored. Civil Local Rule 56(b)(10) (E.D. Wis.). The court will deny as moot the plaintiff's motion to file sur-reply and to strike.

The court **DENIES AS MOOT** the plaintiff's motion to file sur-reply. Dtk. No. 66.

The court **DENIES AS MOOT** the plaintiff's motion to strike. Dkt. No. 66.

The court **ORDERS** that the deadline for the plaintiff to identify defendant John Doe Jail Official 1 is the end of the day on **May 5, 2023**; the deadline for the completion of discovery is the end of the day on **June 5, 2023**; and the deadline for the parties to file motions for summary judgment on the merits is the end of the day on **July 7, 2023**. The parties must file their pleadings in time for the court to *receive* them by the end of the day on which they are due. If the court does not receive pleadings by the end of the day on which they are due, the court may proceed without considering late-filed pleadings.

Dated in Milwaukee, Wisconsin this 7th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**